## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHELLE CATAGNUS,            :
       Plaintiff,            :
       v.            :
                   :
ARAMARK CORPORATION, ARAMARK   :    CIVIL ACTION NO. 02-3529
SERVICES MANAGEMENT OF PA, INC.,   :
ARAMARK HEALTHCARE SUPPORT   :
SERVICES, INC., DOROTHY HOMONY and :
HECTOR OLMO,            :
       Defendants.            :

## ORDER

AND NOW, this ___ day of _____, 2002, upon consideration of defendant Hector Olmo's Motion to Dismiss the Complaint, and plaintiff's response thereto, if any, it is hereby ORDERED AND DECREED that defendant's motion is GRANTED and the Complaint is DISMISSED.


BY THE COURT:


_____
                                    J.

PHL_A #1652764 v1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHELLE CATAGNUS,                                  :
                                                    :
       Plaintiff,                               :
                                                    :
       v.                                       :
                                                    :
ARAMARK CORPORATION, ARAMARK            :    CIVIL ACTION NO. 02-3529
SERVICES MANAGEMENT OF PA, INC.,        :
ARAMARK HEALTHCARE SUPPORT              :
SERVICES, INC., DOROTHY HOMONY and  :
HECTOR OLMO,                                        :
                                                    :
       Defendants.                              :

### MOTION OF DEFENDANT HECTOR OLMO TO DISMISS THE COMPLAINT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant Hector Olmo, by his undersigned attorneys, hereby moves this Court to dismiss plaintiff's Complaint. Mr. Olmo relies on the accompanying Memorandum of Law in support of his Motion.

Respectfully submitted,

Dated: August 19, 2002

_Leslie C. Safran_

John B. Langel (ID No. 20742)
David S. Fryman (ID No. 57623)
Leslie C. Safran (ID No. 80486)
Leah B. Lipskar (ID No. 88339)

Attorneys for Defendants ARAMARK
Corporation, ARAMARK Services
Management of PA, Inc., ARAMARK
Healthcare Support Services, Inc. and
Hector Olmo

OF COUNSEL:
BALLARD SPAHR ANDREWS &
   INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
(215) 665-8500

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MICHELLE CATAGNUS,            :

      Plaintiff,               :

      v.                    :

ARAMARK CORPORATION, ARAMARK   :    CIVIL ACTION NO. 02-3529
SERVICES MANAGEMENT OF PA, INC.,  :
ARAMARK HEALTHCARE SUPPORT    :
SERVICES, INC., DOROTHY HOMONY and :
HECTOR OLMO,                :

      Defendants.           :

**MEMORANDUM OF LAW OF DEFENDANT HECTOR OLMO
IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT**

**I.     INTRODUCTION**

Plaintiff Michelle Catagnus, brings this Title VII retaliation action against her former employer, which she identifies as three ARAMARK corporate entities ("ARAMARK" or the "corporate defendants"). In addition, pursuant to Section 955(e) of the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA"), she asserts claims against two supervisors, alleging that they retaliated against her for supporting the discrimination claims of African-American employees and for filing a charge of retaliation with the Equal Employment Opportunity Commission ("EEOC"). Yet plaintiff failed to identify Mr. Olmo, or his alleged retaliatory acts, in the charge she filed with the EEOC. Further, plaintiff has not pled sufficient facts to establish that Mr. Olmo, who no longer works for ARAMARK, had knowledge of the allegations of retaliation against him before this lawsuit. The failure to identify Mr. Olmo in the EEOC charge or to allege that he knew of the allegations against him before this lawsuit are fatal to her right to sue in this forum. Plaintiff's Complaint against Mr. Olmo should be dismissed for her failure to exhaust administrative remedies.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The EEOC Charge

On May 1, 2001 plaintiff filed a charge with the EEOC (the "EEOC Charge") alleging, under Title VII of the Civil Rights Act of 1964 ("Title VII"), that ARAMARK Corporation retaliated against her for supporting claims of Black employees and for associating with Black employees.  The EEOC Charge contained detailed factual allegations, including the following:

1.     Plaintiff witnessed a White supervisor, Chris Hornbaker (incorrectly identified as "Hornbecker" in the EEOC Charge), yelling at a Black employee, and after the incident, Mr. Hornbaker asked plaintiff to sign a statement to the effect that the employee was at fault, which she refused to do.  (EEOC Charge, attached as Exhibit A, at ¶¶V-VI).

2.     During a meeting attended by all ARAMARK employees and Michael Sheerin (a Presbyterian Medical Center employee who supervised the work performed by ARAMARK and incorrectly identified as "Sheeran" in the EEOC Charge), plaintiff explained that Mr. Hornbaker asked her to lie about the incident she witnessed and that Mr. Hornbaker has referred to certain employees as "stupid."  (EEOC Charge, Ex. A, at ¶ XIII).  Shortly after this meeting, plaintiff came to work wearing African braids and an African scarf, and around the same time, plaintiff's supervisor, Dorothy Homony, learned that the father of plaintiff's son is Black.  (EEOC Charge, Ex. A, at ¶ XII).

3.     Before the events described in the above paragraph, Ms. Homony treated plaintiff with respect and honored her requests for days off or overtime.  (EEOC Charge, Ex. A, at ¶¶ I-IV).  After these events, Ms. Homony denied her requests for days off or overtime, changed her schedule, began to harass her in the same ways she harassed the Black employees and increased her workload.  (EEOC Charge, Ex. A, at ¶¶XIV-XVI).

2

On April 8, 2002, the EEOC issued plaintiff a Notice of Right to Sue, stating that 180 days had passed since the filing of plaintiff's Charge and that it was terminating its processing of the charge. (EEOC Notice of Right to Sue, attached as Exhibit B).

**B.    The Lawsuit**

On May 30, 2002, plaintiff filed her Complaint in the instant action, asserting retaliation claims against the corporate defendants under Title VII and the PHRA, and claims against defendants Homony and Olmo pursuant to Section 955(e) of the PHRA, for aiding and abetting the violations of plaintiff's right to be free from retaliation for participation in protected activities. (See Complaint, ¶¶ 46-59). Plaintiff's allegations in the Complaint are similar to her allegations in the EEOC Charge, with the exception of one glaring inconsistency -- **Hector Olmo, though he appeared nowhere in the EEOC Charge and had no reason to know or believe his conduct was at issue, finds himself a named defendant in the Complaint.** Plaintiff does not allege that she filed a separate charge of discrimination against Mr. Olmo. She does not allege that the EEOC or PHRC investigated her allegations of retaliation against Mr. Olmo. Finally, she does not allege that Mr. Olmo had notice of the allegations of retaliation against him before this lawsuit.

**III.    DISCUSSION**

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[i]t is well settled that a court will grant a motion to dismiss when, even taking all pleaded facts as true, the party against whom the motion is filed cannot prove a set of facts which supports its claim. Parker v. DPCE, Inc., No. 91-4829, 1992 WL 501273, *11 (E.D. Pa. 1992) (citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989)). In this case, plaintiff has not alleged facts that will establish that she has exhausted her administrative remedies with respect to her claim against Mr. Olmo.[1]

---

[1]    The Court may consider the EEOC Complaint and Notice of Right to Sue, attached as Exhibits A and B, respectively, without converting this motion to a motion for summary judgment. See Dixon v. Philadelphia Housing Auth., 43 F. Supp.2d 543, 544-45 (E.D.

(continued...)

3

The PHRA establishes administrative remedies and procedures that claimants must exhaust before bringing a civil action in court. Burgh v. Borough Council of the Borough of Montrose, 251 F.3d 465, 469 (3d Cir. 2001) (citing 43 Pa.C.S. § 962(c) and Clay v. Advanced Computer Applications, Inc., 522 Pa. 86, 559 A.2d 917, 921 (1989)). The PHRA requires that claims be brought first to an administrative agency, the Pennsylvania Human Relations Commission, which has exclusive jurisdiction over the claim for a period of one year in order to investigate and, if possible, conciliate the matter. Id. at 471 (citations omitted).[2]

The purpose of requiring exhaustion of administrative remedies is to afford the administrative agency the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court. See Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996); Glickstein v. Neshaminy Sch. Dist., 1999 WL 58578, Civ. A. No. 96-6236, at *5 (E.D. Pa. 1999) ("One of the goals behind the administrative procedures in both Title VII and the PHRA is to encourage a more informal process of conciliation before allowing the matter to proceed to litigation."). Thus, the PHRA "require[s] the complainant to name in his or her administrative charge all persons alleged to have committed acts of discrimination, so they may be included in informal proceedings." Id. at *5.[3] As explained by this Court in McLaughlin v.

---

(...continued)

Pa. 1999) (considering EEOC charge on a motion to dismiss for failure to exhaust administrative remedies). The Third Circuit has stated, "[w]e now hold that a court may consider an undisputedly authentic document that defendant attached to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied. Id. (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

2    Although plaintiff alleges in the Complaint only that she filed her administrative charge with the EEOC, Mr. Olmo will assume, for purposes of this motion only, that the EEOC Charge was dually filed with the Pennsylvania Human Relations Commission. (See Complaint, ¶38.)

3    The defendant named in the civil action need not be named as a respondent in the administrative charge. The exhaustion requirement may be met if a plaintiff has named the subsequent defendant in the body of the charge because naming the defendants in the body of the charge ensures that they will know of and participate in the administrative proceedings and have an opportunity to resolve matters informally without further litigation. Glickstein, 1999 WL 58578, at *6.

4

Rose Tree Media Sch. Dist., "the purpose of requiring a defendant to be named in the EEOC or PHRA claims is to give that defendant notice of the allegations against [him] such that [he] has an opportunity to resolve the situation without resort to further litigation." 1 F.Supp.2d 476, 482 (E.D. Pa. 1998) (Joyner, J.).

Under limited circumstances, a plaintiff may proceed with suit against a party not named in the administrative complaint "when the unnamed party received notice [of the allegations against him] and when there is a shared commonality of interest with the named party." Schafer v. Board of Public Education of the School District of Pittsburgh, PA, 903 F.2d 243, 251-52 (3d Cir. 1990). A plaintiff's failure to allege sufficient facts to establish notice and a commonality of interests will result in the dismissal of claims against the unnamed party. See, e.g., id. (dismissing claim against the union because plaintiff failed to name the union in his EEOC complaint and he failed to establish the requisite identity of interests between the employer and the union); Diep v. Southwark Metal Mfg. Co., 2001 WL 283146, Civ. A. No. 00-6136, at *4 (E.D. Pa. 2001) (dismissing PHRA claims against one unnamed defendant because he had not received notice of the charges, but allowing claims against another unnamed defendant who attended and participated in the fact-finding conference and, as a human resources manager, had a commonality of interest with the named defendant-employer); Douris v. Brobst, 2000 WL 199358, at *3, Civ. A. No. 99-3357 (E.D. Pa. 2000) (dismissing retaliation claim against defendant who was not named in PHRC/EEOC charge because the EEOC would not have known to initiate a retaliation investigation against the defendant); Dixon v. Philadelphia Housing Authority, 43 F.Supp.2d 543 (E.D. Pa. 1999) (dismissing complaint against defendant because EEOC charge did not refer to defendant or any allegations of discrimination against defendant and defendant was prejudiced because its interests were not represented in any conciliation proceedings); McLaughlin, 1 F.Supp.2d at 483 (dismissing PHRA claim against individual defendant not named in PHRA charge because defendant did not have notice of the allegations against him).

5

Here, plaintiff has failed to exhaust her administrative remedies with respect to Mr. Olmo because she did not mention Mr. Olmo, or any of the allegations of retaliation against Mr. Olmo, in the EEOC Charge. Further, plaintiff fails to allege any facts that could establish that Mr. Olmo had notice of the EEOC Charge or that Mr. Olmo shares a commonality of interests with the other defendants in this lawsuit. To the extent plaintiff claims that Mr. Olmo had knowledge of the EEOC Charge, she cannot establish that Mr. Olmo had knowledge of any allegations of retaliation against him because the EEOC Charge contained none. As Mr. Olmo's alleged retaliatory acts occurred after plaintiff filed the EEOC Charge, these acts necessarily fall outside the scope of the EEOC Charge, and plaintiff does not allege that she filed a separate administrative charge against Mr. Olmo.[4]

Plaintiff's attempt to bypass the administrative stage severely prejudices Mr. Olmo, who is no longer even employed by the corporate defendants. Mr. Olmo has not had the opportunity to respond to plaintiff's allegations at the administrative stage or the opportunity to attempt to resolve the dispute at the administrative stage without resort to further litigation. Similarly, neither the EEOC nor the PHRC received notice of Mr. Olmo's alleged retaliatory acts, therefore, neither agency has had the opportunity to investigate these claims or attempt to settle the dispute. Thus, allowing plaintiff to proceed in this lawsuit against Mr. Olmo would undermine the purpose of the exhaustion requirement and prejudice Mr. Olmo.

In sum, plaintiff should not be permitted to blindside Mr. Olmo, a former first line supervisor, by suing him as an individual defendant in a federal lawsuit, without having satisfied

_____

[4]    On **April 27, 2001**, plaintiff signed the EEOC Charge, verifying that the allegations were true and correct. (See EEOC Charge, Ex. A, at 3). Plaintiff alleges in the Complaint that "**starting in May 2001**" Mr. Olmo began retaliating against her by assigning her more work, refusing her requests for time off, informing her that she was "on her way out of the door," yelling at her in front of others, and issuing unjust write-ups. (See Complaint, ¶ 40-41). Thus, all of the alleged retaliatory acts of Mr. Olmo occurred **after** plaintiff filed her EEOC Charge. Accordingly, neither Mr. Olmo nor his alleged retaliatory acts appear in the EEOC Charge.

the fundamental notice and exhaustion requirements. The case law and fundamental fairness

compel this conclusion.

## IV.   CONCLUSION

For the foregoing reasons, defendant Hector Olmo respectfully requests that the

Court grant his motion and dismiss the Complaint.

Respectfully submitted,

Dated: August 19, 2002

John B. Langel (ID No. 20742)
David S. Fryman (ID No. 57623)
Leslie C. Safran (ID No. 80486)
Leah B. Lipskar (ID No. 88339)

Attorneys for Defendants ARAMARK
Corporation, ARAMARK Services
Management of PA, Inc., ARAMARK
Healthcare Support Services, Inc. and
Hector Olmo

OF COUNSEL:
BALLARD SPAHR ANDREWS &
     INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
(215) 665-8500

PENNSYLVANIA HUMAN RELATIONS COMMISSON and EEOC
*State or local Agency, if any*

| NAME *Indicate Mr., Ms., Mrs.* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Michelle Catagnus | (215) 922-2471 |

| STREET ADDRESS | CITY, STATE, ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 955 North Lawrence Street | Phila., PA 19123 | 10/29/74 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP, COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If ore than one, list below)*

| NAME | NUMBER OF EMPLOYEES | TELEPHONE (Include Area Code) |
|---|---|---|
| ARAMARK | Cat D (501+) | (215) 662-9478 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| Presbyterian HospitaL, 39th & Market Streets, Philadelphia, PA 191 | | Philadelphia 101 |

| NAME | | TELEPHONE (Include Area Code) |
|---|---|---|
| | | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON (Check Appropriate Box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| RACE  □ COLOR  □ SEX  □ RELIGION  □ NATIONAL ORIGIN | EARLIEST              LATEST |
| x RETALIATION  □ AGE  □ DISABILITY  □ OTHER (SPECIFY) | /  /        /  /  |
| | ■ CONTINUING ACTION |


01 MAY -1 PM 1:24

Case 2:02-cv-00828-JCJ    Document 1    Filed 08/19/2002    Page 11 of 14

...as a transition worker. During my pregnancy in 1999, I was transferred to environmental services for several months. After my maternity leave, in October or November 1999, I returned to work in the linen/distribution department. In December 2000, I applied for and obtained a part-time position as a patient service associate ("PSA"). In February or early March, 2001, I was given a full time position as a PSA.

II. I came under the supervision of Dorothy Homony when I obtained the PSA position.

III. At that time, I was the only white worker under Ms. Homony's supervision. At first, Ms. Homony was very nice to me. If I asked for a day off or for overtime, she would honor my request without hesitation. She did not honor such requests of the rest of the workers, who were black.

IV. She used a nasty tone of voice, and she frequently would not look at black workers when she spoke to them. She spoke me respectfully.

V. On one of the first days I was working as a PSA, I witnessed an incident where Chris Hombecker (w/m) was yelling at a black worker named Mr. Hill on the fourth floor in front of the elevators. Mr. Hombecker was right up in Mr. Hill's face. Mr. Hill attempted to walk away. Mr. Hombecker followed Mr. Hill and got up in his face again, continuing to yell at Mr. Hill. This was clearly inappropriate because an employer should never yell at an employee in that way where others, such as patients and their family could see and hear. I knew Mr. Hill, who is an older black gentleman, for the entire time I have worked at Presbyterian Medical Center and found him to be a kind gentleman who never spoke rudely or loud. I was very surprised to see Mr. Hombecker yelling at him.

VI. Immediately after the incident, Mr. Hombecker asked me to sign a statement as a witness to the incident to the effect that Mr. Hill was at fault. I refused.

VII. The next day, Mr. Hombecker asked me what I saw, I told him exactly what I described above. He asked me to say that. Instead he asked me to say that I saw Mr. Hill in Mr. Hombecker's face and that Mr. Hill was refusing to do his job. I told him that I would not lie for him.

VIII. The following day, I was called to Mr. Hoppler's office who I understood to be in charge of ARAMARK at Presbyterian Medical Center. I told Mr. Hoppler exactly what I saw, and that Mr. Hombecker had asked me to lie, and I refused. Mr. Hoppler asked me questions suggesting that Mr. Hill was at fault, and I told him that he had it wrong.

IX. Soon after the incident involving Mr. Hill, I was with Chris Hombecker at another part of the facility, when he said, referring to a black worker named Steve (last name unknown) "that is one stupid nigger."

X. There was a meeting for all of the ARAMARK workers at Presbyterian with Mike Sheeran who worked for the hospital and was in charge of the work performed by ARAMARK for the hospital.

XI. I was the only white person not part of management at the meeting.

XII. Mr. Sheeran asked us if we had comments or complaints. I explained, in front of all of the employees, that Chris Hombecker had asked me to lie on another employee and explained that this is not a good way to run the operation. I explained that Chris Hombecker tells some employees about his opinion that other employees are stupid. He has to stop picking on people.

XIII. Some time after the meeting, I came to work with African braids and an African scarf on my head. Dorothy Homony looked at me very surprised and she clearly took offense. She told me that I could not wear a hat, and I responded that it was a scarf, not a hat, and that I needed it because my braids were not finished. At around the same time, Ms. Homony learned that my son's father is black.

XIV. Since these events, Ms. Homony has not honored my requests for days off or overtime. She has not treated me with the level of respect that she did previous to these incidents. She began using the same nasty tone of voice and body language that she previously reserved for black. She has started to harass me in the same ways that I watched her harass black workers since I first came into contact with her as a manager.

XV. For example, she changed my schedule from day to night, and from night to day twice. I complained and she said, this was

Case 2:02-cv-03529-JCJ Document 2 Filed 08/19/2002 Page 12 of 14

now she increased it from three to four floors per shift. I believe that she is setting me up to fail, because four floors is an unreasonable amount to require in one shift.

XVII. I needed Ms. Homony's signature on my time card because I made an error in punching in on the out slot. I knocked on her door. She opened it. Before I could explain what I needed, she slammed the door in my face. She would never have done that before I spoke at the meeting, and before I came to work with my hair braided.

XVIII. I believe that the retaliation against me for supporting claims against ARAMARK, and for associating with blacks in a wa Ms. Homony does not approve of, has caused all of the actions against me described above. I believe that the treatment I received is part of the pattern by ARAMARK to discriminate against black workers, and part of a pattern of retaliating against those who stand up to the pattern of racial discrimination..

I want this charge filed with both the EEOC and the State or Local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

4/27/01  Michelle Catroonus
Date           Charging Party

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Form 161-B (10/96)

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: Ms. Michelle Catagnus
955 N. Lawrence Street
Philadelphia, PA 19123

From: Equal Employment Opportunity Commission
Philadelphia District Office
The Bourse
21 S. Fifth Street, Suite 400
Philadelphia, PA 19106-2515

[    ]    On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 0A200170 | Joyce L. Jones, Investigator | 215-440-2649 |

(See also the additional information attached to this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ x ]    More than 180 days have passed since the filing of this charge.

[   ]    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[ x ]    The EEOC is terminating its processing of this charge.

[   ]    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[   ]    The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[   ]    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Marie M. Tomasso, District Director

April 8, 2002
*(Date Mailed)*

Enclosure(s)
Information Sheet

cc:    Joel I. Fishbein, Esquire (For Charging Party)
Rosemary Philbin, Esquire (For Respondent)

## CERTIFICATE OF SERVICE

I, Leslie C. Safran, hereby do certify that on this day I served the foregoing Motion of Defendant Hector Olmo To Dismiss the Complaint, and memorandum of law in support thereof, by sending the same by First Class Mail, postage prepaid, as follows:

Joel I. Fishbein, Esquire
Abrahams, Loewenstein & Bushman, P.C.
One Liberty Place, Suite 3100
1650 Market Street
Philadelphia, PA 19103-7392

Stephen A. Whinston, Esquire
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103

Neil J. Hamburg, Esquire
Hamburg & Golden, P.C.
1601 Market Street, Suite 565
Philadelphia, PA 19103-1443

Dated: August 19, 2002

Leslie C. Safran