IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
MICHELLE CATAGNUS              : CIVIL ACTION
                               :
     vs.                       :
                               : NO. 02-3529
ARAMARK CORPORATION, ARAMARK   :
SERVICES MANAGEMENT OF PA,     :
INC., ARAMARK HEALTHCARE       :
SUPPORT SERVICES, INC.,        :
DOROTHY HOMONY and HECTOR OLMO :
```

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                          **November      , 2002**

This Title VII/Pennsylvania Human Relations Act ("PHRA") action has been brought before the Court by the Defendant, Hector Olmo, to dismiss the plaintiff's complaint against him for Plaintiff's failure to exhaust administrative remedies. For the reasons outlined below, the motion is granted in part and the plaintiff's claims against Mr. Olmo in his personal capacity are dismissed.

**Factual Background**

According to the averments in the complaint, Plaintiff, Michelle Catagnus, began working part-time for the Aramark defendants in the linen/distribution department at Presbyterian Hospital in Philadelphia on April 7, 1997.[1] In late 2000, Ms.

---

[1] ARAMARK Health Support Services, Inc. and ARAMARK Services Management of PA, Inc. are subsidiaries of ARAMARK Corporation

Catagnus applied for and obtained a part-time position as a patient service associate at Presbyterian, at which time she came under the supervision of Defendant Dorothy Homony and one Chris Hornbaker.  Plaintiff further alleges that she was the only Caucasian worker under Defendant Homony's supervision and that on the first day that she worked as a patient service associate, she witnessed Mr. Hornbaker yelling aggressively at Davis Hill, an older African-American worker, who in turn attempted to walk away.  When Mr. Hornbaker requested Plaintiff to sign a statement attesting that Mr. Hill had been at fault in the incident, she refused and subsequently advised both the General Manager of Aramark's Presbyterian operations and the Presbyterian Hospital liaison with Aramark that Mr. Hornbaker had asked her to lie about an incident with another employee.

In addition, it was at or around this same time that Ms. Catagnus heard Mr. Hornbaker refer to another African-American employee as "one stupid nigger" and that Defendants Hornbaker and Homony filed a group of disciplinary charges against some 35 African-American employees, which resulted in a group grievance challenging these charges as racially motivated.  Shortly thereafter (and around the same time that she learned that the

---

(hereafter "ARAMARK Defendants").  The ARAMARK defendants took over the provision of services in the Environmental Services, Patient Services and Distribution Departments at Presbyterian Medical Center ("PMC") on June 6, 1993. (Complaint, ¶9).

father of Plaintiff's children was African-American), Ms. Homony began harassing and treating Plaintiff in the same rude manner that she had previously reserved for African-American employees and stopped honoring Plaintiff's requests for days off and overtime. (Complaint, ¶s32-36, 39).

On May 1, 2000, Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission against Aramark only, alleging retaliation for her participation in protected conduct, *i.e.,* supporting the grievance claims against Aramark and for associating with African-Americans. In that filing, Plaintiff specifically referenced the incident about which Mr. Hornbaker had asked her to lie and numerous instances of alleged discrimination by Ms. Homony. On April 8, 2002, the EEOC issued Plaintiff a Notice of Right to Sue, more than 180 days having passed since the filing of Plaintiff's charge. Plaintiff thereafter commenced this suit against Aramark Corporation and its subsidiaries, Aramark Services Management of Pa., Inc. and Aramark Healthcare Support Services, Inc., Dorothy Homony and Hector Olmo. As against Mr. Olmo, plaintiff averred that "[s]tarting in May 2001, [she] suffered similar discriminatory and retaliatory treatment at the hands of Hector Olmo who replaced Dorothy Homony as a supervisor of PSA's." (Complaint, ¶40).

As he was nowhere named or otherwise identified in the EEOC

charge[2], Defendant Olmo now argues that the plaintiff failed to exhaust her administrative remedies with respect to him and that the complaint against him must now be dismissed.  In response, the plaintiff alleges that her claims of retaliation against Mr. Olmo are clearly within the scope of her EEOC charge and thus she should be excused from naming him in her administrative complaint.  Alternatively, Plaintiff argues that Defendant Olmo should not be dismissed because he is liable in his official capacity as an Aramark employee.

### Standards Governing Rule 12(b)(6) Motions

In resolving a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3rd Cir. 1990).  In so doing, the court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000)(internal quotations omitted).  A motion to dismiss may only be granted where the allegations fail to state any claim upon

---

[2] It should be noted that the plaintiff's charge was "dual filed" with both the EEOC and the Pennsylvania Human Relations Commission ("PHRC").

which relief may be granted and "if it is certain that no relief can be granted under any set of facts which could be proved." Klein v. General Nutrition Companies, Inc., 186 F.3d 338, 342 (3d Cir. 1999)(internal quotations omitted). See Also, Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997).

### Discussion

Ordinarily, an action under Title VII and/or the PHRA may only be brought against a party previously named in a charge filed with the appropriate administrative agency. See: 42 U.S.C. §2000e-5(f)(1); Dixon v. Philadelphia Housing Authority, 43 F.Supp.2d 543, 545 (E.D.Pa. 1999). This is because one of the goals behind the administrative procedures in both Title VII and the PHRA is to encourage a more informal process of conciliation before allowing the matter to proceed to litigation. Glickstein v. Neshaminy School District, Civ. A. No. 96-6236, 1999 WL 58578 at *5 (E.D.Pa. Jan. 26, 1999), citing Dreisbach v. Cummins Diesel Engines, Inc., 848 F.Supp. 593, 595 (E.D.Pa. 1994). See Also: Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996) ("The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court.").

Under certain circumstances, however, a plaintiff may proceed with suit against a party not named in the administrative complaint. Davies v. Polyscience, Inc., 126 F.Supp.2d 391, 393

(E.D.Pa. 2001). The Court of Appeals for the Third Circuit has recognized that an exception to the exhaustion requirement exists "when the unnamed party received notice and when there is a shared commonality of interest with the named party." Schafer v. Board of Public Education, 903 F.2d 243, 252 (3d Cir. 1990); Diep v. Southwark Metal Manufacturing Company, Civ. A. No. 00-6136, 2001 WL 283146 at *4 (E.D.Pa. March 19, 2001). Indeed, the Third Circuit Court of Appeals has articulated a four-part test for determining whether a district court has jurisdiction under Title VII. Specifically, the court should consider: (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. Glickstein, 1999 WL 58578 at *6; Dixon, 43 F.Supp.2d at 546, both citing Glus v. G.C. Murphy Co., 629 F.2d 248 (3d Cir. 1980), *vacated on other grounds*, 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981).

Where discriminatory actions continue after the filing of an EEOC complaint, however, the purposes of the statutory scheme are not furthered by requiring the victim to file additional EEOC complaints and re-starting the 180 day waiting period. Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). The rationale behind this is that once the EEOC has tried to achieve a consensual resolution of the complaint, and the discrimination continues, there is minimal likelihood that further conciliation will succeed. Id. The relevant test in determining whether an individual was required to exhaust her administrative remedies, therefore, is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom. Id.; Douris v. Brobst, Civ. A. No. 99-3357, 2000 WL 199358 at *3 (Feb. 14, 2000). Thus the federal court action may encompass any claims which fall within "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Duffy v. Southeastern Pennsylvania Transportation Authority, Civ. A. No. 94-4260, 1995 WL 299032 at *3 (May 12, 1995), quoting Ostapowicz v. Johnson, 541 F.2d 394, 398-399 (3d Cir. 1976); Hicks v. ABT Associates, Inc., 572 F.2d 960, 966 (3d Cir. 1978).

In this case, our examination of the PHRC/EEOC charge reveals that the only respondent named is "Aramark" and that the only Aramark employees identified and whose discriminatory

behavior is complained about are Dorothy Homony and Chris Hornbecker (sic). The charge does not allege anything about any other Aramark representative, either by name, title or general description.

Moreover, the charge in this matter was filed on May 1, 2001, which is the date on which the complaint alleges that Mr. Olmo's discriminatory and retaliatory conduct began. We therefore conclude that Mr. Olmo's role could have been ascertained at or around the time of the filing of the administrative complaint. Alternatively it does not appear that plaintiff would have suffered a lengthy setback had she amended her charge to include Mr. Olmo. Indeed, the Notice of Right to Sue was not issued until April 8, 2002 and then apparently only upon the plaintiff's request. We believe it is likely that the EEOC's investigation would have been expanded within this time frame to include an examination into Mr. Olmo's behavior as well as Ms. Homony's and Mr. Hornbaker's. While Mr. Olmo apparently succeeded Ms. Homony as the plaintiff's supervisor and to that extent would perhaps share a "commonality of interest," we cannot find any other evidence to suggest that he or Aramark had the requisite notice that the plaintiff was also charging him with the same type of discrimination which she purportedly suffered at the hands of Defendant Homony or that he or Aramark had any opportunity to conciliate these claims prior to the filing of the

complaint in this case.  Consequently, we find that the exhaustion exception does not apply here and that the complaint must be dismissed against Hector Olmo for failure to exhaust administrative remedies.

In so holding, however, we dismiss the claims against Mr. Olmo in his personal capacity only.  As noted by our learned colleague, Judge Pollack in Duffy v. SEPTA, supra., official capacity claims, in contrast to personal capacity claims, are simply another way of asserting claims against an office or the company itself.  Because there would be complete identity between the named party and the unnamed defendant when sued in his official capacity for continuing a company pattern of discrimination, we believe that the plaintiff should be permitted the opportunity to elicit discovery into whether or not the Aramark defendants should have known that Mr. Olmo was behaving in a like manner to Ms. Homony and Mr. Hornbaker to perpetuate the discriminatory environment which allegedly existed at Aramark for Plaintiff and her African-American co-workers.  For this reason, we find that the plaintiff's failure to name Olmo in her EEOC charge does not preclude her from asserting an official capacity claim against this defendant.[3]     Duffy v. Septa, 1995 WL

---

[3] Defendants remain free, of course, to move for summary judgment at the close of discovery with respect to the claim against Mr. Olmo in his official capacity should there be no evidence adduced that these claims in fact fell within the scope of the EEOC/PHRC charge.

299032 at *2.  See Also: Will v. Michigan Department of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).

    An order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
MICHELLE CATAGNUS              : CIVIL ACTION
                               :
     vs.                       :
                               : NO. 02-3529
ARAMARK CORPORATION, ARAMARK   :
SERVICES MANAGEMENT OF PA,     :
INC., ARAMARK HEALTHCARE       :
SUPPORT SERVICES, INC.,        :
DOROTHY HOMONY and HECTOR OLMO:
```

**ORDER**

AND NOW, this            day of November, 2002, upon consideration of the Motion of Defendant Hector Olmo to Dismiss Plaintiff's Complaint against him and Plaintiff's response thereto, it is hereby ORDERED that the Motion is GRANTED IN PART and Plaintiff's claims against Defendant Hector Olmo in his personal capacity are DISMISSED for failure to exhaust administrative remedies.

BY THE COURT:

_____
J. CURTIS JOYNER,      J.